IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01991-PAB-SKC

LESLIE SUSAN DALE

    Plaintiff,

v.

COUNTRY PREFERRED INSURANCE COMPANY,

    Defendant.
_____

# ORDER
_____

This matter is before the Court on Defendant's Motion for Summary Judgment [Docket No. 51]. The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This case involves the alleged delay in payments of benefits under an insurance policy. On December 2, 2015, plaintiff was involved in a car accident with another driver, Joseph Merkle. Docket No. 51 at 2, ¶ 1. Mr. Merkle had an automobile policy with Allstate Insurance Company, and plaintiff was insured by defendant. *See id.* at 2-3, ¶¶ 2-3. Plaintiff's policy with defendant provided $50,000 in under- or uninsured motorist ("UIM") benefits. *Id.* at 3, ¶ 3. Although plaintiff was injured in December 2015, she did not notify defendant that Mr. Merkle's policy was allegedly insufficient to cover her damages until May 8, 2018.[2] *See id.* at 4, ¶ 5. Defendant responded on May

---

[1] The following facts are undisputed unless otherwise indicated.

[2] Plaintiff denies that she did not inform defendant that Mr. Merkle's insurance policy was insufficient until May 8, 2018. *See* Docket No. 53 at 1-2, ¶ 5. However,

9, 2018, to which plaintiff responded on June 14, 2018, stating that she intended to seek UIM benefits. *Id.*, ¶¶ 6-7. Plaintiff attached certain medical records to that letter and a "Summary of Injuries being Claimed." *Id.*, ¶¶ 7-8. Plaintiff also asserted lost income, based in part upon a purported job she was "about to accept" prior to the accident. *Id.* at 4, ¶ 9.

On July 5, 2018, defendant requested medical records related to plaintiff's pre-accident medical history. *Id.* at 5, ¶ 12. After plaintiff failed to provide the medical records, defendant asked again on October 11, 2018.[3] *See id.* On November 30, 2018, plaintiff informed defendant that plaintiff was filing suit against Mr. Merkle and requested that defendant keep the UIM claim open; plaintiff did not provide any medical records at that time. *Id.*, ¶ 14. Defendant reminded plaintiff that defendant was still awaiting pre-accident medical records. *Id.*, ¶ 15. Plaintiff sent defendant medical

---

plaintiff's denial states that she is "unsure" of when she alerted defendant to her claims and has no documentation to support her denial. *See id.* ("Plaintiff's [c]ounsel does not have copies of Letters of Representation and possibly other correspondence from [p]laintiff's prior [c]ounsel to [d]efendant regarding the UIM claim."). Plaintiff is required to "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). Plaintiff does not point to any evidence demonstrating she informed defendant of her damages prior to May 8, 2018 and, rather, admits that she has no evidence to support her denial. As a result, the Court deems this fact admitted. *See* Fed. R. Civ. Proc. 56(e)(2) (permitting a court to consider a fact that a party "fails to properly address" as "undisputed for the purposes of the motion").

[3] Plaintiff denies that she did not "cooperate" in signing the medical releases and providing medical records and cites Docket No. 53-3. *See* Docket No. 53 at 3, ¶ 13. However, Docket No. 53-3 simply states that counsel would "ask" plaintiff to sign the medical releases. *See* Docket No. 53-3 at 1. Accordingly, the Court deems it admitted that plaintiff did not sign the release or send the medical records before defendant's October 11, 2018 letter. *See* Fed. R. Civ. Proc. 56(e)(2) (permitting a court to consider a fact that a party "fails to properly address" as "undisputed for the purposes of the motion").

release authorizations in December 2018, and defendant sent those releases to the medical providers identified in plaintiff's June 14, 2018 letter to obtain plaintiff's pre-accident medical history.[4]  *See id.*, ¶ 16.

On February 25, 2019, plaintiff informed defendant that the law suit against Mr. Merkle was still ongoing.  *Id.*, ¶ 17.  On May 3, 2019, defendant told plaintiff that it was still attempting to obtain pre-accident medical records, that plaintiff had failed to provide documentation regarding her lost wages, and that plaintiff had not submitted proof that she was unable to work.  *Id.* at 5-6, ¶ 18-20.  Plaintiff provided defendant with documents of her lost wages on May 23, 2019.  *Id.*, ¶ 22.  Plaintiff also sent defendant a functional capacity evaluation and a vocational rehabilitation report that were used in the law suit against Mr. Merkle.  *Id.* at 6-7, ¶ 23.  In that same May 23, 2019 letter, plaintiff stated that defendant had fourteen days to pay the limits of plaintiff's policy.  Docket No. 53 at 10, ¶ 16.

On June 3, 2019, plaintiff informed defendant that she would be settling her claim with Mr. Merkle for $242,000, $8,000 less than the limit of Mr. Merkle's policy.  Docket No. 51 at 7, ¶ 24.  On June 11, 2019, after plaintiff's self-imposed fourteen-day deadline for defendant to tender the UIM benefits passed, plaintiff filed suit in state court.  Docket No. 53 at 10, ¶ 17.  On June 13, 2019, defendant tendered the full amount of plaintiff's UIM benefits, $50,000.  *See* Docket No. 51 at 7, ¶ 25.

---

[4] Defendant asserts that the releases were received on December 17, 2018 and plaintiff asserts that she sent them on December 7, 2018.  *See* Docket No. 51 at 5, ¶ 16; Docket No. 53 at 4, ¶ 16.  Defendant's supporting documentation shows December 17, 2018, while plaintiff's supporting documentation shows December 7, 2018.  *See* Docket No. 51-10 at 1; Docket No. 53-4 at 1.  The exact date, however, is immaterial.

Defendant removed the case from state court on July 10, 2019. *See* Docket No. 1. Plaintiff brings two claims: (1) unreasonable delay or denial pursuant to Colo. Rev. Stat. §§ 10-3-1115, 1116 and (2) common law insurance bad faith.[5] *See* Docket No. 7 at 6-10. On September 8, 2020, defendant filed a motion for summary judgment. *See* Docket No. 51.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of

---

[5] Defendant represents that these are the two claims in dispute, *see* Docket No. 51 at 1, although plaintiff's complaint also asserts a third claim for underinsured motorist benefits. *See* Docket No. 7 at 6. Plaintiff addresses these two claims in its response to the motion for summary judgment and does not address her claim for UIM benefits. *See generally* Docket No. 53. Accordingly, the Court only addresses the statutory delay and common law bad faith claims.

evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

Because both of plaintiff's claims are based on state law, the Court applies Colorado law in resolving the motion. *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state.").

#### A. Unreasonable Delay or Denial

Under section 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."[6] Colo. Rev. Stat. § 10-3-1115(1)(a). Similarly, section 10-3-1116 states that "[a] first-party

---

[6] The parties do not dispute that plaintiff is a first-party claimant within the meaning of the statute. *See* Colo. Rev. Stat. § 10-3-1115.

claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." Colo. Rev. Stat. § 10-3-1116(1). An insurer's delay is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2).

Because the statutes at issue here create a cause of action that is different from the common law tort of bad faith breach of an insurance contract, the "burden of proving th[e] statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing." *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011); *see also Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012) ("Even if plaintiff's claim for . . . benefits were 'fairly debatable' in the common law context, that would not alone establish that defendant's actions here were reasonable as a matter of law."); *see also Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847-48 (Colo. 2018) (adopting the Colorado Court of Appeals' interpretation of section 10-3-1115) . However, under the statutes, the reasonableness of an insurer's conduct must be determined objectively. *See Am. Family Mut. Ins. Co v. Allen*, 102 P.3d 333, 342 (Colo. 2004). "If a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was fairly debatable, this weighs against a finding that the insurer acted unreasonably." *Schultz*, 429 P.3d at 848 (quotation and citation omitted). Although courts are to examine fair debatability, it is "not a threshold inquiry that is outcome determinative as a

matter of law, nor is it both the beginning and the end of the analysis in a bad faith case." *Id.* (quotation and citation omitted).

Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists. *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law. *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008). An insurer's claims handling decisions "must be evaluated based on the information before the insurer at the time of that decision," *State Farm Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011), and Colorado law requires insurance companies to "conduct[] a reasonable investigation based upon all available information." Colo. Rev. Stat. § 10-3-1104(1)(h)(IV). "[A] reasonable investigation is one that is based upon 'all available information.'" *Allen*, 102 P.3d at 345. "In conducting this investigation, the insurer must promptly and effectively communicate with anyone it was reasonably aware had information pertaining to the handling of a plaintiff's claim." *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 891 (10th Cir. 2016) (citations, quotations, and alterations omitted). An investigation must be fair and adequate, meaning that the insurer "has a duty to diligently search for evidence which supports the insured's claim." *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1004 (D. Colo. 2020) (citations, quotations, and alterations omitted)

Defendant argues that its investigation and length of time it took to pay plaintiff's UIM benefits was reasonable because it was not required to pay any UIM benefits until it was clear that plaintiff's damages exceeded Mr. Merkle's liability limits.[7] *See* Docket No. 51 at 8-13. In response, plaintiff argues that Colorado law does not require an insured to exhaust the limits of the underlying tortfeasor's policy to recover UIM benefits. *See* Docket No. 53 at 12. Rather, plaintiff contends that it is the liability limits of the tortfeasor, not the actual recovery, that is relevant. *See id.* This disagreement is illusory, as defendant argues that it did not know whether plaintiff's liability "exceeded Mr. Merkle's available liability limits" until it received plaintiff's medical records and wage statements. *See* Docket No. 51 at 12. In other words, defendant agrees that it is the limits of the policy and not the actual recovery that is relevant but, until its investigation was complete, it could not determine whether plaintiff's claims actually exceeded Mr. Merkle's limits. *See Montoya v. Allstate Ins. Co.*, No. 14-cv-02943-LTB-KMT, 2016 WL 192274, at *2 (noting that it is the liability limit of the tortfeasor and not the recovery that is relevant for UIM claims)*.*

Nevertheless, the Court finds that summary judgment is inappropriate. There are two categories of issues regarding defendant's investigation that prevent summary judgment: (1) plaintiff's pre-existing medical history and (2) plaintiff's lost wages. The Court addresses each in turn.

---

[7] In reply, defendant argues that plaintiff failed to cooperate with defendant's investigation. *See* Docket No. 57 at 6. However, this argument was raised for the first time in reply and, as a result, the Court considers it waived. *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief." (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)).

First, regarding plaintiff's pre-existing medical conditions, defendant made several attempts between July and November 2018 to obtain either medical records or releases from plaintiff. *See* Docket No. 51 at 5, ¶¶ 12-14. Without this information, it is unclear how defendant could conduct a "reasonable" investigation into plaintiff's claims. However, it is not clear whether plaintiff argues that defendant unreasonably delayed plaintiff's claim during this time period.

Plaintiff provided defendant with her medical releases in December 2018 and defendant sent the authorizations to the relevant medical providers. *Id.*, ¶ 16. What action defendant took after these initial steps to obtain plaintiff's medical records is not in the record. For example, although defendant asserts that it had difficulty in obtaining plaintiff's pre-existing medical history, defendant does not explain what that difficulty was. *See id.* at 5-6, ¶ 18. And, plaintiff asserts that she was not made aware of defendant's attempts to obtain the records until six months later on May 3, 2019, when defendant wrote a letter to plaintiff indicating that defendant had received some records but not others. Docket No. 53 at 5, ¶ 18.

Colorado law, however, requires an insurer to "acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." *See* Colo. Rev. Stat. § 10-3-1104(h)(II). Or, in other words, an insurer must "promptly and effectively communicate" with those it is "reasonably aware" has pertinent information regarding plaintiff's claim. *See Peden*, 841 F.3d at 891; *see also Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 147 n.7 (Colo. 2007) ("[B]ad faith can occur in the unreasonable refusal to investigate a claim or to gather facts."). Given the six

month delay between receiving the medical authorizations and writing to plaintiff, a reasonable jury could conclude that defendant did not "promptly and effectively communicate" with those who it believed had relevant information regarding plaintiff's claim. *See Peden*, 841 F.3d at 891; *see also Thompson*, 457 F. Supp. 3d at 1005 (finding that a reasonable jury could conclude that the insurer's failure to obtain additional information was not an adequate and fair investigation). It is for the jury to decide whether defendant did in fact follow up with plaintiff's providers, whether defendant's actions in doing so were reasonable, and whether defendant should have taken further action when it encountered difficulty with obtaining plaintiff's medical records.

Defendant also argues that it is entitled to summary judgment because it was reasonable to delay plaintiff's claim until it received more documentation regarding plaintiff's lost wages, which represented the bulk of her claim. *See* Docket No. 51 at 10; Docket No. 51-4 at 13 (attaching plaintiff's June 14, 2018 letter, which states that plaintiff's medical bills totaled $49,530.08 and lost income claim totaled $343,250). Essentially, defendant suggests that plaintiff has a duty to substantiate her lost income claim before defendant was required to pay any UIM benefits. Plaintiff's initial demand letter provided detailed descriptions of her wages and identified many of the companies she worked for. *See* Docket No. 51-4 at 12. Once plaintiff made defendant aware of potential lost wages, defendant was required to conduct a fair and adequate investigation of the claim and request information from persons defendant believed had relevant information regarding plaintiff's claim. *See Peden*, 841 F.3d at 891; *Thompson*, 457 F. Supp. 3d at 1004. There is no evidence that defendant took any

action until May 3, 2019 to investigate plaintiff's lost wage claims. Defendant does not appear to have interviewed plaintiff, asked for more documentation, or otherwise investigated the claim.[8]

For example, in *Peden*, the insured sued the insurer for delaying payment on UIM benefits on a theory of a failure to reasonably investigate after the insured was in an accident with a drunk driver. 841 F.3d at 888. The insurer valued the claim at $272,474.76, but that estimate did not include future non-economic damages or future wage loss. *Id.* at 893. The insured "submitted documents including medical records, a photograph following surgery, and a college transcript." *Id.* Based on this, the insured claimed that the injury "prevented her from graduating college, sapped her of energy, caused her to avoid people, diminished her memory, and hurt her concentration." *Id.* Nonetheless, the insurer declined to pay damages for non-economic and future wage loss.

The Tenth Circuit held that the insurer "could have consulted with a physician, asked [the insured] to submit to a physical examination, or interviewed her," but did "none of these things." *Id.* Had it done so, the insurer "could have been better equipped" to assess damages. *Id.* As a result, the Tenth Circuit found that a fact-finder

---

[8] Defendant also seems to argue that, because it believes the extent of plaintiff's claims were "fairly debatable," its investigation was reasonable and it is entitled to summary judgment. *See* Docket No. 51 at 11-13. Even if plaintiff's lack of documentation made plaintiff's lost wages claim "fairly debatable," that alone is insufficient to support summary judgment for defendant. *See TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1202 (D. Colo. 2018) (citing *Glacier Constr. Co. v. Travelers Prop. Cas. Co. of Am.*, 569 F. App'x 582, 590 (10th Cir. 2014)) (finding that, even if the "plaintiff's failure to substantiate its losses" made the claim 'fairly debatable,' the fair debatability of a claim is insufficient to support summary judgment on behalf of the insurer).

could "justifiably question the reasonableness" of the investigation. *Id.*; *see also Ramos v. State Farm Mut. Ins. Co.*, No. 19-cv-01634-KMT, 2020 WL 6134901, at *9-10 (D. Colo. Oct. 19, 2020) (finding summary judgment inappropriate where the insurer did not request a sworn statement or medical records during its investigation). Similarly, plaintiff here provided detailed information to defendant regarding her lost wages in the initial demand letter, but defendant apparently failed to conduct any investigation for many months even though defendant would have been "better equipped" to assess plaintiff's claim had it conducted some investigation. *See Peden*, 841 F.3d at 893. A reasonable jury could conclude that defendant's investigation was inadequate given that it waited twelve months to request more information, particularly given that it is disputed as to what information plaintiff provided and when. *See* Docket No. 53 at 2, ¶ 9 (denying that plaintiff failed to provide her Social Security Earnings Statement on June 14, 2018). Under the circumstances here, where the insurer fails to seek lost wage information for nearly twelve months and disputes over material facts exist regarding when the insured provided its own wage information, summary judgment is inappropriate.

### B. Bad Faith

Plaintiff claims that defendant breached its common law duty of good faith for the same conduct at issue in the statutory claim. Docket No. 7 at 8-10. Under Colorado law, a "special duty is imposed upon an insurer to deal in good faith with an insured." *Decker v. Browning-Ferris Indus. of Colo.*, 931 P.2d 436, 443 (Colo. 1997) (citing *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141-42 (Colo. 1984)). To show bad

faith in a first-party claim, the insured must prove (1) that the insurer acted "unreasonably under the circumstances" and (2) that "the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Goodson v. Am. Std. Ins. Co. Of Wis.*, 89 P.3d 409, 415 (Colo. 2004).

The Court already concluded that defendant is not entitled to summary judgment on the reasonableness of its investigation under the "less onerous" statutory claim. *See Kisselman*, 292 P.3d at 975. For the same reasons described above, the Court concludes that summary judgment in favor of defendant is inappropriate on plaintiff's bad faith claim. The Court therefore need not address the second prong of the bad faith analysis.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 51] is **DENIED**.

DATED July 13, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

13